

**Reena I. Desai**  
Direct: (612) 256-3244  
Fax: (612) 338-4878  
rdesai@nka.com  

4700 IDS Center  
80 South Eighth Street  
Minneapolis, MN 55402  
(877) 448-0492

February 1, 2023

**VIA ECF**
The Honorable Katherine Polk Failla
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Arielle Beachy v. TransPerfect Translations Int'l, Inc.*
      No. 1:22-cv-07572-KPF

Dear Honorable Judge Failla:

Nichols Kaster, PLLP represents Plaintiff Arielle Beachy in the above-referenced matter. We write jointly with attorneys for Defendant TransPerfect Translations International Inc. ("TransPerfect") to request that the Court (i) approve the parties' settlement agreement, attached as Exhibit 1, pursuant to *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015); and (ii) dismiss this case with prejudice. The agreement resolves Plaintiff Beachy's individual claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, *et seq.* and California State Law, the California State Labor Code, Cal. Wage Order No. 4; Cal. Labor Code §§ 510, 1194, and 1198 for the total amount of $17,000.00 (inclusive of all attorneys' fees and costs). As part of this motion, Plaintiff's Counsel also requests an award of attorneys' fees of one-third of the total settlement amount (33.33% or $5,666.60) and $1,034.87 for costs. After deductions for fees and costs, Plaintiff will directly receive the remaining $10,298.53. For the reasons set forth below, this settlement is a fair and reasonable compromise of a bona fide dispute, and the Court should approve it.

I.   **RELEVANT FACTS**

   A.   **Background**

On September 6, 2022, Plaintiff filed this case seeking unpaid overtime compensation under the FLSA on behalf of herself and others similarly situated and for her individual California state law claims. (Compl., ECF No. 1.)[1] Plaintiff has worked for Defendant, a New York company

---

[1] Plaintiff was previously an opt-in plaintiff in a related matter, *Menchaca v. TransPerfect Translations Int'l, Inc.*, No. 21-cv-09390, filed in the Central District of California on December 3, 2021. (*Menchaca* Compl., ECF No. 1.) The named plaintiff in that case was required to submit her claim to arbitration, but a stipulation between Defendant and Plaintiff tolled Plaintiff's claims. (*Menchaca* Stip., ECF No. 28.) Plaintiff withdrew from the *Menchaca* case and filed this case on

providing language services, as a project manager since approximately 2018 and currently works remotely from her home in Hawaii. (*Id.* ¶¶ 8–11.) Defendant employs project managers like Plaintiff to coordinate projects and ensure they are completed according to Defendant's contracts with its customers. (*Id.* ¶¶ 17–19.) Defendant pays Plaintiff a salary and classifies her as exempt from state and federal overtime laws. (*Id.* ¶¶ 20–21.) However, Plaintiff alleges she worked more than 40 hours in a workweek and was not paid overtime wages due to her under the FLSA and California state law. (*Id.* ¶¶ 23–28.) While this case was filed as a putative collective action under the FLSA, no additional plaintiffs have opted-in to make claims for their overtime pay.

Defendant answered Plaintiff's complaint on October 11, 2022, denying the allegations and asserting various affirmative defenses, including that its conduct was not willful, that it acted in good faith, and that Plaintiff was not entitled to overtime pay because she is covered under the administrative exemption pursuant to the FLSA and the California Labor Code. (Def. Ans., ECF No. 13.)

### B.   Mediation and Settlement

On October 12, 2022, the Court issued a mediation referral order, directing the parties to attend mediation prior to the Federal Rule of Civil Procedure 16(b) case management conference. (Order, ECF No. 15.) The parties scheduled a mediation on December 7, 2022 with mediator Michael Blechman. (Desai Decl. ¶ 2.) Prior to the mediation, the parties agreed it would only cover Plaintiff's individual claims and not those of the putative collective class under the FLSA. (*Id.*)

Before mediation, Defendant produced certain pay data so Plaintiff's Counsel could calculate damages. (*Id.*) Defendant produced biweekly paystubs for Plaintiff, covering dates between December 2017 and August 2022. (*Id.* ¶ 3.) This data served as the basis for Plaintiff's damages model. (*Id.*) Defendant also required Plaintiff to record, in weekly spreadsheets, the number of hours she worked each week beginning March 2020. (*Id.*) Defendant produced these spreadsheets, and the overtime hours identified were applied in Plaintiff's damages calculation. (*Id.*) Prior to March 2020, at which time Plaintiff began recording her hours worked in the weekly hours spreadsheets, Plaintiff estimated she worked between approximately 45 to 50 hours a week, which was considered in the damages calculation. (*Id.*)

The parties attended mediation with mediator Blechman on December 7, 2022. (*Id.* ¶ 4.) The parties were unable to reach a resolution during the mediation but continued to negotiate and ultimately reached an agreement to resolve Plaintiff's claims. (*Id.* ¶ 5.) On January 3, 2023, the parties executed a term sheet memorializing the essential terms of their agreement. (*Id.*) Later, on January 13, 2023, they executed a settlement agreement detailing the complete terms of their agreement. (Settlement Agmt., Ex. 1.)

---

September 6, 2022, seeking unpaid overtime compensation under the FLSA on behalf of herself and others similarly situated and for her individual California state law claims. (Compl., ECF No. 1.) This settlement does not resolve any claims for any putative collective class members. (*See* Settlement Agmt., Ex. 1.) Plaintiff has settled her individual claims and requests that her case, including Plaintiff's alleged collective action claims, be dismissed. (*Id.*)

The parties agreed to a total settlement amount of $17,000.00. (*Id.*) It includes $5,666.60 for attorneys' fees (one-third of the total settlement amount), $1,034.87 for costs, and $10,298.53 for Plaintiff for her asserted claims. (*Id.* ¶ 1.) In exchange for payment, Plaintiff agreed to a release of claims, which is limited to a release of: (1) her individual claims asserted in the action; (2) all claims of unpaid, underpaid or improperly paid wages and compensation under the FLSA, the California State Law, Cal. Wage Order No. 4; Cal Labor Code §§ 510, 1194, and 1198; the California Unfair Competition Law, Business and Professions Code Section 17200; and (3) any contract, tort, or common law theories concerning Plaintiff's compensation, hours of work, pay for those hours of work, or Defendant's payroll practices; and (4) all claims relating to wage statements or wage related notices or record-keeping requirements through January 13, 2023. (*Id.* ¶ 4.)

Within fourteen days of the Court's Order approving the settlement and dismissing the action with prejudice, Defendant will deliver the settlement payments to Plaintiff's Counsel, including the payment for attorneys' fees and costs. (*Id.* ¶ 1.)

## II.     THE PROPOSED SETTLEMENT SHOULD BE APPROVED

### A.     The Settlement is Fair and Reasonable

Under *Cheeks*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect." 796 F.3d at 206. "The purpose of the judicial review process is to ensure that the agreement is fair and reasonable to the plaintiff." *Cabrera v. CBS Corp.*, 2019 WL 502131, at *4 (S.D.N.Y. Feb. 8, 2019) (quotation omitted). "Because *Cheeks* itself did not define the contours of the approval analysis or the protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Id.* (quotation omitted).

Accordingly, in determining if an FLSA settlement is fair and reasonable, courts consider the totality of the circumstances, including the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id.* at *5; Wolinsky v. Scholastic Inc.*, 900 F. Supp. 332, 335 (S.D.N.Y. 2012).

#### 1.     Plaintiff's Range of Possible Recovery

Plaintiff's Counsel calculated Plaintiff's maximum damages for her FLSA and California state law claims to be $41,333.15. (Desai Decl. ¶ 6.) That amount represents $16,781.77 for Plaintiff's FLSA damages (assuming a three-year statute of limitation and a 1.5 overtime multiplier), another $16,781.77 for liquidated (double) damages under the FLSA, and $7,769.62 for California state law damages (that do not overlap with Plaintiff's federal claims). (*Id.* ¶ 7.) The proposed settlement amount of $10,298.53 for Plaintiff is approximately 25% of her best-case damages calculated by Plaintiff's Counsel, *after* deductions for attorneys' fees and costs. This is

a fair and reasonable recovery in a case where there are sharply contested factual and legal disputes regarding the proper classification of Plaintiff's employment with Defendant and Defendant disputes that it owes Plaintiff anything. *See Vargas Ortiz v. Three Star on First, Inc.*, 2019 WL 4013981, at *2 (S.D.N.Y. Aug. 26, 2019) (approving settlement where recovery was 23.4% of plaintiff's best-case recovery); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (approving settlement where plaintiff would receive 25.8% of his maximum possible recovery). Moreover, the release here is limited to the claims asserted in this action and related wage and hour claims and does not contain a confidentiality provision, which further supports approval.[2] *See Santos v. Yellowstone Props., Inc.*, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016).

        2.      <u>Extent to Which the Settlement Enables the Parties to Avoid Anticipated Burdens and Expenses</u>

The parties reached a settlement after exchanging information and data which provided the necessary information to evaluate the claims and defenses. If the case proceeded, the parties would engage in discovery and depositions, briefing on FLSA collective action certification (and possibly decertification), summary judgment motions, preparing for and attending trial, and handling subsequent appeals. Under this settlement, Plaintiff can recover money now rather than waiting for prolonged litigation. This early resolution, which avoids the expense of future litigation, makes sense.

        3.      <u>Litigation Risks</u>

The parties disputed several key issues including: (1) whether Plaintiff was properly classified as overtime exempt under the FLSA and California law; (2) the amount of overtime Plaintiff worked during the statutory period; (3) whether the fluctuating workweek method of calculating damages applied (i.e., whether the proper overtime multiplier is 0.5 or 1.5); (4) whether Defendant acted in good faith in classifying Plaintiff as exempt for liquidated (double) damages to apply; (5) whether Defendant's conduct was willful for a three-year statute of limitations to apply; and (6) whether certification under section 216(b) of the FLSA was appropriate. If the parties had not reached a settlement, these contested issues would have been litigated through summary judgment or trial, creating risk that Plaintiff would lose some or all of these issues.

        4.      <u>Arm's Length Bargaining and Lack of Fraud or Collusion</u>

---

[2] While the settlement agreement does not contain a confidentiality clause, it does include a "No Publicity" clause where Plaintiff and Plaintiff's Counsel agree not to issue a press release or contact news media outlets about the settlement or its terms. (Settlement Agmt. ¶ 7, Ex. 1.) Plaintiff's Counsel also agrees not to disclose the terms of the agreement if contacted by the media. (*Id.*). Such clauses are routinely accepted by Courts within this district. *See Flores v. Studio Castellano Architect, P.C.*, 2017 WL 4417697, at *3 (S.D.N.Y. Oct. 2, 2017) (holding that non-disclosure provision was "well within the bounds of both reason and fairness" where it was "limited to an agreement not to publicize the terms of the settlement in news or social media").

This settlement was the product of an arm's length negotiations through counsel, following a mediation session with mediator Blechman. The parties carefully negotiated a settlement under which, to receive payment, Plaintiff is only releasing limited claims. Moreover, Plaintiff approves of the settlement and the settlement here eliminates the inherent risks that both sides would face if litigation were to proceed.

### B. Plaintiff's Counsel's Fees and Costs are Reasonable and Should Be Approved

Plaintiff requests that the Court approve an award of attorneys' fees to Plaintiff's Counsel of $5,666.60, which is one-third of the total settlement amount, and litigation costs of $1,034.87. Defendant does not oppose the requested amounts. (Settlement Agmt. ¶¶ 1, 3, Ex. 1.)

The FLSA provides for an award of attorneys' fees to a plaintiff's counsel. *See* 29 U.S.C. § 216(b) ("[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). When a proposed settlement of FLSA claims includes the payment of attorneys' fees, the court must also assess the reasonableness of the fee award. *Wolinsky*, 900 F. Supp. 2d at 336; *see* 29 U.S.C. 216(b). In an individual FLSA action where the parties settled on the fee, there is a greater range of reasonableness for approving attorneys' fees, but courts must still scrutinize the settlement to ensure the interests of plaintiffs' counsel in counsel's own compensation did not adversely affect the extent of relief for the client. *Wolinsky*, 900 F. Supp. 2d at 336.

Plaintiff's Counsel here seeks a fee of one-third of the total settlement, in the amount of $5,666.60. "The Second Circuit favors the percentage-of-the-fund method of calculating attorneys' fees because it directly aligns the interests of Plaintiff and [her] counsel." *Gonzalez v. Citusa Park Ave., LLC*, 2020 WL 8920703, at *2 (S.D.N.Y. Nov. 30, 2020) (quotation omitted). Contingency fees of one-third in FLSA cases are routinely approved in the Second Circuit, but as a check on the reasonableness of attorneys' fees, courts still calculate the total cost of attorneys' hours billed under the lodestar method. *Id.*

Here, a one-third fee is consistent with awards in similar cases in this district and is therefore reasonable. *Santos*, 2016 WL 2757427, at *4 (collecting cases and explaining that one-third of the total settlement sum is consistent with contingency fees commonly accepted in the Second Circuit in FLSA cases).

The lodestar method further supports Plaintiff's Counsel's request for fees. Plaintiff's Counsel has spent approximately 121 hours on this matter. Plaintiff's Counsel has: (1) investigated the claims; (2) drafted and filed the complaint and initiating documents; (3) met with Plaintiff on multiple occasions; (4) analyzed data for the damages calculation; (5) performed a week-by-week damages analysis; (6) prepared for and attended mediation, including drafting an extensive mediation brief; (7) negotiated a settlement; (8) drafted and/or revised the terms sheet and settlement agreement; and (9) prepared this letter seeking approval. (Desai Decl. ¶ 8.) To date, Plaintiff's Counsel's work has resulted in attorneys' fees expended of over $46,000.00, which is approximately $40,000.00 more than the amount requested. (*Id.*)

Counsel's billing rates used to calculate the lodestar are also reasonable. Reena I. Desai, a partner at Nichols Kaster, PLLP, had primary responsibility for litigating and settling the case and charges $525.00 per hour, which is in line with similar rates approved in this district.[3] *See Williams v. Epic Sec. Corp.*, 368 F. Supp. 3d 651, 658 (S.D.N.Y. Mar. 25, 2019) (citing cases and finding $600.00 hourly rate reasonable given counsel's "vast experience practicing law and in wage-and-hour cases"). Plaintiff's Counsel's experience in handling FLSA cases is extensive, and Counsel used this experience to position this case for an early resolution. (Desai Decl. ¶¶ 9–10.)

Finally, Plaintiff's Counsel requests reimbursement of $1,034.87 in out-of-pocket litigation costs. These costs primarily include filing fees, service of process, and legal research charges. (*See* Costs Detail, Ex. 2.) These costs are reasonable and should be approved. *Chamoro v. 293 3rd Café Inc.*, 2016 WL 5719799, at *4 (S.D.N.Y. Sept. 30, 2016) (reimbursing costs incurred for filing fees and service of process): *Oleniak v. Time Warner Cable Inc.*, 2013 WL 12447094, at *9 (S.D.N.Y. Dec. 17, 2013) ("Courts typically allow counsel to recover their reasonable out-of-pocket expenses.").

For all these reasons, the parties respectfully request that the Court approve the settlement as fair and reasonable; award the requested attorneys' fees and costs; and dismiss this matter with prejudice.

Respectfully submitted,

Dated: February 1, 2023

| **NICHOLS KASTER, PLLP** | **DLA PIPER LLP (US)** |
|---|---|
| By: /s/Reena I. Desai<br>Michele R. Fisher, Esq.<br>Reena I. Desai, Esq.*<br>Kayla Kienzle, Esq.*<br>80 South 8th Street, Suite 4700<br>Minneapolis, MN 55402<br>Tel: (612) 256-3200<br>fisher@nka.com<br>rdesai@nka.com<br>kkienzle@nka.com<br>*Admitted *pro hac vice*<br><br>*Attorneys for Plaintiff* | By: /s/Daniel Turinsky<br>Daniel Turinsky, Esq.<br>Ryan O'Connor, Esq.<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Tel.: (212) 335-4500<br>daniel.turinsky@us.dlapiper.com<br>ryan.oconnor@us.dlapiper.com<br><br>*Attorneys for Defendant* |

---

[3] Even if lower billing rates were applied, Plaintiff's Counsel's lodestar amount would greatly surpass the $5,666.60 requested.